# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NORTH DAKOTA
# EASTERN DIVISION

| | |
|---|---|
| AUSTIN STUART FRAASE,<br><br>Plaintiff,<br><br>vs.<br><br>ADVANTAGE CREDIT BUREAU,<br><br>Defendant. | **Civil Case No.**:<br><br>**COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

## COMPLAINT

Austin Fraase ("Plaintiff" or "Mr. Fraase") by and through his counsel brings the following Complaint against Advantage Credit Bureau ("Defendant") for violations of the federal Fair Credit Reporting Act ("FCRA"), 15 U.S.C. §§ 1681, *et seq.*, arising out of an employment background check report that Defendant published to Plaintiff's potential employer, which falsely reported twice the criminal records of another onto the report prepared about Plaintiff.

## INTRODUCTION

1. This is an individual action for damages, costs, and attorney's fees brought against Defendant pursuant to the Fair Credit Reporting Act, 15 U.S.C. §§ 1681, *et seq.* ("FCRA").

2. Defendant is a consumer reporting agency that compiles and maintains files on consumers on a nationwide basis. It sells consumer reports generated from its database and furnishes these consumer reports to employers who use the reports to make decisions regarding whether to offer employment to certain consumers.

1

3. Defendant falsely reported to Plaintiff's prospective employer that Plaintiff was convicted of speeding 24 Mph over the limit. Defendant's reporting is grossly inaccurate and untrue.

4. Plaintiff has never been charged with the aforementioned criminal allegation in his life.

5. Due to Defendant's inaccurate reporting, Plaintiff's employer initially told Plaintiff that they could not proceed with promoting him to the better paying job because it required a great deal of driving and based on Defendant's report, the employer's insurance policy premiums would be increased if the employer added Plaintiff to the insurance policy.

6. Plaintiff became gravely concerned that even his current position was in jeopardy due to Defendant's inaccurate reporting because his employer was so surprised to see those records on Defendant's report.

7. Defendant's inaccurate reporting could have easily been avoided had Defendant reviewed the widely available underlying public court records from Cass County, North Dakota, regarding the criminal record prior to publishing Plaintiff's report to his prospective employer.

8. Had Defendant performed even a cursory review of the underlying public court records, it would have discovered that the criminal record belonged to a different consumer who is wholly distinguishable from Plaintiff by their given name and social security number.

9. Defendant does not employ reasonable procedures to assure the maximum possible accuracy of the information it reports regarding consumers. Defendant's failure to employ reasonable procedures resulted in Plaintiff's report being grossly inaccurate.

10. Defendant committed these violations pursuant to its standard policies and practices, which harm innocent consumers seeking employment by prejudicing their prospective employers with inaccurate criminal record information.

11. Defendant's inaccurate report cost Plaintiff a delay in starting the new position by at least one week, and all of the stress and aggravation that came with that week when Plaintiff thought he had lost the permanent position and was in danger of losing his current seasonal role as well.  The permanent position meant that Plaintiff would go from being a seasonal worker to a permanent worker and further his wages would be increased, and he would be eligible for benefits. Further, Plaintiff had to have uncomfortable conversations with his boss to explain himself and that the record in question didn't belong to him, but worst yet, belonged to his brother.

12. As a result of Defendant's violations of the FCRA, Plaintiff has suffered a range of actual damages including, without limitation, near loss of employment opportunities, wages, fear of losing the permanent job opportunity and benefits that come along with it and  job security; loss of economic opportunities and a permanent position, including advancements in the future; loss of time and money trying to correct his background check report by establishing it was inaccurate and contained the criminal record of another; the expenditure of labor and effort disputing and trying to correct the inaccurate reporting; damage to his reputation; loss of sleep; lasting psychological damage; loss of capacity for enjoyment of life; and emotional distress, including mental anguish, anxiety, fear, frustration, humiliation, and embarrassment.

13. As a result of Defendant's conduct, action, and inaction, Plaintiff brings claims against Defendant for failing to follow reasonable procedures to assure maximum possible accuracy based on 15 U.S.C. § 1681e(b) of the FCRA.

**PARTIES**

14. Austin Stuart Fraase ("Plaintiff" or "Mr. Fraase") is a natural person residing in West Fargo, North Dakota and is a "consumer" as that term is defined in 15 U.S.C. § 1681a(c).

15. Defendant Advantage Credit Bureau ("Advantage" or "Defendant') is a North Dakota corporation doing business throughout the United States, including the State of North Dakota and in this District, and has a principal place of business located at 5050 47th Street S, Suite #100, Fargo, ND 58104.

16. Among other things, Defendant sells background checks to employers for their use in deciding whether to offer employment to prospective employees or to take adverse action such as termination, failure to hire, or failure to promote. These reports are provided in connection with a business transaction initiated by the employer.

17. Defendant is a consumer reporting agency as defined in 15 U.S.C. § 1681a(f) because for monetary fees, it regularly engages in the practice of evaluating and/or assembling information on consumers for the purpose of furnishing consumer reports for employment purposes to third parties, and uses interstate commerce, including the Internet, for the purpose of preparing and furnishing such consumer reports.

**JURISDICTION AND VENUE**

18. This Court has jurisdiction over Plaintiff's claims pursuant to 28 U.S.C. § 1331 and 15 U.S.C. § 1681p, which allows claims under the FCRA to be brought in any appropriate court of competent jurisdiction.

19. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this District.

## STATUTORY BACKGROUND

20. Enacted in 1970, the FCRA's passage was driven in part by two related concerns: first, that consumer reports were playing a central role in people's lives at crucial moments, such as when they applied for a job or credit, and when they applied for housing. Second, despite their importance, consumer reports were unregulated and had widespread errors and inaccuracies.

21. While recognizing that consumer reports play an important role in the economy, Congress wanted consumer reports to be "fair and equitable to the consumer" and to ensure "the confidentiality, accuracy, relevancy, and proper utilization" of consumer reports. 15 U.S.C. § 1681.

22. Congress, concerned about inaccuracies in consumer reports, specifically required consumer reporting agencies to follow "reasonable procedures to assure maximum possible accuracy" in consumer reports. 15 U.S.C. § 1681e(b).

23. Consumer reports that contain factually incorrect information which does not belong to the consumer at issue are neither maximally accurate nor fair to the consumers who are the subjects of such reports.

## THE FCRA'S PROTECTIONS FOR JOB APPLICANTS

24. Despite its name, the Fair Credit Reporting Act covers more than just credit reporting, it also regulates employment background check reports like the one Defendant prepared in Plaintiff's name.

25. The FCRA provides a number of protections for job applicants who are the subject of background checks for purposes of securing employment, housing, and other purposes.

26. In the parlance of the FCRA, background checks are "consumer reports," and providers of background checks, like Defendant, are "consumer reporting agencies." 15 U.S.C. §§ 1681a(d) and (f).

27. The FCRA imposes duties on consumer reporting agencies to assure that consumer reports are accurate and that "consumer reporting agencies exercise their grave responsibilities with fairness, impartiality, and a respect for the consumer's right to privacy." 15 U.S.C. § 1681.

28. Under 15 U.S.C. § 1681e(b), consumer reporting agencies are required "to follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates."

29. Defendant disregarded its duties under the FCRA with respect to Plaintiff's background check report.

## DEFENDANT'S ILLEGAL BUSINESS PRACTICES

30. Over the past 15 years, there has been increased collection and aggregation of consumer data, including criminal records and sex offender registration data. As a result of the increasing availability of this data, there has been a boom in the background check industry.

31. As summarized in a recent report by the Consumer Financial Protection Bureau[1], a 2018 survey of employers found that 95 percent of employers surveyed conducted one or more types of background screening. CFPB Report at 4.

32. The criminal background check industry takes in revenues in excess of three billion dollars, annually.[2]

---

[1] CFPB, *Market Snapshot: Background Screening Reports* (Oct. 2019), https://files.consumerfinance.gov/f/documents/201909_cfpb_market-snapshot-background-screening_report.pdf ("CFPB Report").
[2] IBISWorld, Inc., *Background Check Services in the US: Report Snapshot*, available at http://www.ibisworld.com/industry/background-check-services.html.

33. Criminal background checks are generally created by running automated searches through giant databases of aggregated criminal record data. The reports are created and disseminated with little to no manual, in-person review, and the underlying court records are rarely directly reviewed in creating criminal background checks.

34. Background check companies, like Defendant, collect millions of criminal records from a number of sources with data from county, state, and federal level sources. The data included on the reports is often not obtained directly from court records on an individual basis but instead is purchased in bulk or scraped from court websites.

35. Given that Defendant is in the business of selling background checks, Defendant should be well aware of the FCRA and the attendant harm to consumers for reporting inaccurate or outdated information.

36. Defendant places its business interests above the rights of consumers and reports such inaccurate information because it is cheaper for Defendant to produce reports containing information that is inaccurate and incomplete than it is for Defendant to exert proper quality control over the reports prior to their being provided to Defendant's customers.

37. Defendant reports such erroneous and incomplete information because it wants to maximize the automation of its report creation process, thereby saving the costs associated with conducting the additional review necessary to remove the inaccurate or out-of-date entries.

38. Defendant charges its customers the same price for reports that are grossly inaccurate as it does for accurate reports.

39. Appropriate quality control review of Plaintiff's report would have made clear that Defendant was reporting a criminal record that belonged to another consumer who has a different first name and social security number than Plaintiff.

40. As a provider of background check reports, Defendant should be aware of the FCRA requirements and is likely a member of the Professional Background Screening Association ("PBSA"). PBSA hosts a conference at least once a year where presenters discuss compliance with federal and state consumer reporting laws.

## FACTS

### Plaintiff Applies for a Permanent Job with Fargo Park District

41. In May 2023, Plaintiff was working for Fargo Park District on a seasonal non-permanent basis as a Gulf course Maintenance Technician. Because Plaintiff was a seasonal worker, he did not receive any benefits (health insurance, vacation, PTO, etc.).

42. That same month, Fargo Park District began actively seeking to fulfill a permanent position that was very similar to the position Plaintiff was already fulfilling on a seasonal basis. Plaintiff was thrilled at the opportunity to secure a permanent position because not only did the role offer a higher wage, but it also meant that Plaintiff would qualify for benefits.

43. On or about May 10, 2023, Plaintiff applied for the full-time permanent Park Maintenance Technician position with Fargo Park District, located in Fargo, North Dakota.

44. Upon applying to Fargo Park District, Plaintiff was invited to interview for the role. Specifically, Plaintiff's interview was scheduled for May 16, 2023.

45. Plaintiff's eligibility for the Park Maintenance Technician role was conditioned upon Plaintiff passing a background check ("employment report.").

### Defendant Published an Inaccurate Background Check Report to Fargo Park District

46. Fargo Park District is a government entity. As such, its employees are subject to random background checks.

47. Fargo Park District contracted with Defendant to conduct background checks, including criminal background checks, on its prospective employees.

48. On or about May 11, 2023, and as part of its random background check procedure, Fargo Park District ordered a criminal background check on Plaintiff from Defendant.

49. On or about May 11, 2023, in accordance with its standard procedures, Defendant completed its employment report about Plaintiff and sold the same to Fargo Park District.

50. Within that employment report, Defendant published inaccurate information about Plaintiff.

51. Specifically, Defendant's employment report about Plaintiff included one grossly inaccurate and stigmatizing criminal record from Cass County, North Dakota, which appeared in the employment report as follows:

```
RESULTS            Records Found
NAME SEARCHED      FRAASE, AUSTIN S.           SEARCH DATE    05-11-2023 11:42 AM MDT
DOB SEARCHED       04-02-XXXX                  SEARCH SCOPE
JURISDICTION       NORTH DAKOTA
JURISDICTION(S) SEARCHED
The search you have selected is a search of our criminal database(s) and may not represent 100% coverage of all criminal
records in all jurisdictions and/or sources. Coverage details available upon request.
```

**Case number**: WF-2023-TR-00192

**Offense date**: 01/19/2023

**Offense**: Speeding 24 Mph Over Limit

**Offense level**: No level

**Disposition date**: 01/20/2023

52. The criminal record reported by Defendant about Plaintiff to Fargo Park District *did not* belong to Plaintiff.

53. Plaintiff has never been charged with or convicted of a criminal record in his life.

9

54. A cursory review of the widely available underlying public court records confirms that the record belonged to Plaintiff's brother, Aaron Stuart Fraase.

55. Had Defendant actually consulted or obtained the widely available underlying public court records regarding the criminal record, it would have seen obvious discrepancies between Aaron Stuart Fraase and Plaintiff.

56. The discrepancies that should have caused Defendant to realize Plaintiff is not the same person as the owner of the criminal record include the following:

   (a) Plaintiff's legal name is "*Austin* Stuart Fraase", and the criminal record belongs to "*Aaron* Stuart Fraase," which is both clearly indicated on the face of the employment report and in the widely available public records from Cass County, North Dakota;

   (b) Plaintiff's Social Security number, which was provided to Defendant is contained on the face of the subject employment report, is different than that of *Aaron* Stuart Fraase.

57. To add insult to injury, within the **same** background check that Defendant reported the false criminal records about Plaintiff, Defendant simultaneously reported Plaintiff's motor vehicle record as clear.



58. The sole reason the inaccurate criminal record was reported as belonging to Plaintiff was that Defendant failed to follow reasonable procedures to assure the maximum possible accuracy of the information it published within the employment report it sold about Plaintiff to Plaintiff's prospective employer.

59. Had Defendant followed reasonable procedures, it would have discovered that the inaccurate, stigmatizing criminal conviction belonged to his brother with a different first name than Plaintiff and a different Social Security Number than Plaintiff.

11

60. In preparing and selling a consumer report about Plaintiff, wherein Defendant published to Plaintiff's prospective employer inaccurate information about Plaintiff, Defendant failed to follow reasonable procedures to assure that the report was as accurate as maximally possible, in violation of 15 U.S.C. § 1681e(b).

**Fargo Park District Delays Plaintiff's Job Offer**

61. On or about May 15, 2023, Plaintiff's boss and/or supervisor called Plaintiff into his office to discuss Plaintiff's "driving behavior" in relation to Defendant's inaccurate report.

62. Further, Plaintiff was told that due to Defendant's reporting in the May 11, 2023, background check, Plaintiff's application for the Park Maintenance Technician was in jeopardy because Fargo Park District was not willing to absorb the increased insurance premiums attendant to adding Plaintiff onto their insurance policy based on Defendant's reporting. Plaintiff's boss viewed Plaintiff as a potential hazard to the company.

63. Plaintiff was distressed at any mention of a criminal record. He was mortified at the scolding he was subject to by his employer in relation to a criminal record that he was not familiar with.

64. Shortly thereafter, Plaintiff obtained a copy of the subject employment report and was shocked and humiliated upon reviewing and realizing that the criminal record of another individual, namely Aaron Stuart Fraase, was published in the employment report Defendant sold about Plaintiff to Fargo Park District.

65. Plaintiff informed Fargo Park District that he has never been convicted of a criminal record in his life. Plaintiff pointed out that his first name is Austin, and Defendant's report establishes the criminal record belongs to Aaron, Plaintiff's brother.

66. Plaintiff was very panicked, confused, and concerned about the impact of the criminal record reported on the subject employment report – specifically, the impact of the same on his future.

67. Specifically, Defendant matched Plaintiff to the record with little more than a middle name, last name, and date of birth and published the criminal record of Aaron Stuart Fraase onto the employment report about Plaintiff and sold that report to Plaintiff's prospective employer. This exculpatory public record information was widely available to Defendant prior to publishing Plaintiff's employment report to Fargo Park District, but Defendant failed to perform even a cursory review of such information.

**Defendant Published an Inaccurate Background Check Report to Fargo Park District**

68. After Plaintiff disputed the inaccurate information with Fargo Park District and explained that the criminal record at issue didn't belong to him but rather his brother, on or about May 15, 2023, Fargo Park District ordered another criminal background check on Plaintiff from Defendant.

69. On or about May 15, 2023, in accordance with its standard procedures, Defendant completed its employment report about Plaintiff and sold the same to Fargo Park District.

70. Within that employment report, Defendant once again published the inaccurate information about Plaintiff.

71. The sole reason the inaccurate criminal record was *again* reported as belonging to Plaintiff was that Defendant failed to follow reasonable procedures to assure the maximum possible accuracy of the information it published within the employment report it sold about Plaintiff to Plaintiff's prospective employer.

72. Had Defendant followed reasonable procedures, it would have discovered that the inaccurate, stigmatizing criminal conviction belonged to his brother with a different first name than Plaintiff and a different Social Security Number than Plaintiff.

73. In preparing and selling a consumer report about Plaintiff, wherein Defendant published to Plaintiff's prospective employer inaccurate information about Plaintiff, Defendant failed to follow reasonable procedures to assure that the report was as accurate as maximally possible, in violation of 15 U.S.C. § 1681e(b).

74. Defendant's false report nearly cost Plaintiff a promising, well-paying permanent position with Fargo Park District.

75. Due to Defendant's unreasonable procedures in the first place and despite Plaintiff's best efforts, his start date in the new role was delayed by approximately a week.

76. The injuries suffered by Plaintiff as a direct result of Defendant's erroneous reporting are the type of injuries that the FCRA was enacted to address. Under common law, Defendant's conduct would have given rise to causes of action based on defamation and invasion of privacy.

77. As a result of Defendant's violations of the FCRA, Plaintiff has suffered a range of actual damages including, without limitation, near loss of employment opportunities, wages, fear of losing the permanent job opportunity and benefits that come along with it and job security; loss of economic opportunities and a permanent position, including advancements in the future; loss of time and money trying to correct his background check report by establishing it was inaccurate and contained the criminal record of another; the expenditure of labor and effort disputing and trying to correct the inaccurate reporting; damage to his reputation; loss of sleep; lasting

psychological damage; loss of capacity for enjoyment of life; and emotional distress, including mental anguish, anxiety, fear, frustration, humiliation, and embarrassment.

### CLAIMS FOR RELIEF

### COUNT I
### 15 U.S.C. § 1681e(b)
### Failure to Follow Reasonable Procedures to Assure Maximum Possible Accuracy

78. Plaintiff re-alleges and incorporates by reference the allegations set forth in the preceding paragraphs as if fully stated herein.

79. Defendant is a "consumer reporting agency" as defined by 15 U.S.C. § 1681a(f).

80. At all times pertinent hereto, Plaintiff was a "consumer" as that term is defined by 15 U.S.C. § 1681a(c).

81. At all times pertinent hereto, the above-mentioned employment report was a "consumer report" as that term is defined by 15 U.S.C. § 1681a(d).

82. Defendant violated 15 U.S.C. § 1681e(b) by failing to establish or to "follow reasonable procedures to assure maximum possible accuracy" in the preparation of the employment report it sold about Plaintiff as well as the information it published within the same.

83. As a result of Defendant's violations of the FCRA, Plaintiff has suffered a range of actual damages including, without limitation, near loss of employment opportunities, wages, fear of losing the permanent job opportunity and benefits that come along with it and job security; loss of economic opportunities and a permanent position, including advancements in the future; loss of time and money trying to correct his background check report by establishing it was inaccurate and contained the criminal record of another; the expenditure of labor and effort disputing and trying to correct the inaccurate reporting; damage to his reputation; loss of sleep; lasting

psychological damage; loss of capacity for enjoyment of life; and emotional distress, including mental anguish, anxiety, fear, frustration, humiliation, and embarrassment.

84. Defendant willfully violated 15 U.S.C. § 1681e(b) in that its conduct, actions, and inactions were willful, rendering them liable for actual or statutory damages, and punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n. Alternatively, they were negligent, entitling Plaintiff to recover under 15 U.S.C. § 1681o.

85. Plaintiff is entitled to recover statutory damages, punitive damages, and reasonable attorneys' fees and costs from Defendant in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and/or § 1681o.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for the following relief:

i. Determining that Defendant negligently and/or willfully violated the FCRA;

ii. Awarding Plaintiff actual, statutory, and punitive damages as provided by the FCRA;

iii. Awarding Plaintiff reasonable attorneys' fees and costs as provided by the FCRA; and,

iv. Granting further relief, in law or equity, as this Court may deem appropriate and just.

## DEMAND FOR JURY TRIAL

Plaintiff is entitled to and hereby demands a trial by jury on all issues so triable.

Dated: June 21, 2023

**CONSUMER ATTORNEYS**

By: */s/ Michael Yancey*
Michael Yancey, ND #09787
8245 N. 85th Way
Scottsdale, AZ 85258
E: myancey@consumerattorneys.com
T: (480) 573-9272
F: (718) 715-1750
*Attorney for Plaintiff Austin Fraase*