# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NORTH DAKOTA
# EASTERN DIVISION

| | |
|---|---|
| Austin Stuart Fraase, | ) |
| | ) |
| Plaintiff, | ) **ORDER ON MOTIONS** |
| | ) **FOR SUMMARY JUDGMENT** |
| vs. | ) |
| | ) Case No. 3:23-cv-117 |
| Advantage Credit Bureau, | ) |
| | ) |
| Defendant. | ) |

Austin Fraase applied for employment with the Fargo Park District ("Fargo Parks") in May 2023. Fargo Parks contracted with Advantage Credit Bureau ("Advantage") to perform a background check on Fraase. Advantage erroneously stated in its report that Fraase's criminal record contained a traffic violation for speeding. In reality, it was Fraase's twin brother who had the speeding violation. Fraase sued Advantage for violating the Fair Credit Reporting Act ("FCRA"), arguing that Fargo Parks delayed his employment due to the inaccurate report and that he suffered emotional distress. Both parties move for summary judgment. For the reasons below, Fraase's motion is denied, and Advantage's motion is granted.

## I.   BACKGROUND

Advantage is a credit reporting agency that processes upwards of 50 employment related background checks each day. Doc. 64-7 at 32. To run a search, it requires at least five items of information: first name, last name, social security number, date of birth, and address. Id. at 18. Advantage has an experienced three-person employment screening staff, with the newest member joining in 2015. Id. at 20. When it hires new employees, the new hire spends months working alongside a supervisor who oversees the new employee. Doc. 64-17 at 16-17. This oversight continues for up to a year. Id. at 17.

In April 2023, Fargo Parks hired Fraase as a seasonal Golf Course Maintenance Technician. Doc. 44-1 at 17. As a standard practice, it conducts annual background checks on its employees, with the relevant background checks conducted in May 2023. Doc. 66-3 at 7. Shortly after being initially hired, on May 10, 2023, Fraase applied for a full-time position as a Maintenance Technician with Fargo Parks and was set to interview on May 16. Doc. 1 ¶¶ 42-44. The next day, Fargo Parks ordered a background check from Advantage on Austin Fraase, and Advantage returned its report that same day. Doc. 1 ¶¶ 48-49. In one section, the report indicated that Fraase's driving record was clear, but another section reported that Fraase was convicted for "Speeding 24 Mph Over Limit." Id. ¶¶ 51, 57.

In authorizing the background check, Frasse provided Advantage his name, address, social security number, date of birth, and driver's license number. Doc. 64-1 at 2. While preparing the report, an Advantage employee conducted a manual search of the North Dakota Courts website. Doc. 64-17 at 12-13. The website includes a disclaimer that the "North Dakota Court system provides this service as is, without warranty of any kind." Doc. 64-6 at 60. With the "Exact Name" tool enabled, the employee searched the criminal records database using Fraase's first name, last name and full date of birth. Doc. 64-8. The search produced one result, a speeding violation for "Fraase, Aaron Stuart." Id. At that time, the West Fargo Municipal Court grouped the Fraase brothers together in a single "jacket;" it treated them as the same person because of the similarities in their identifying information. Doc. 64-11 at 46. The case number associated with the speeding violation contained an embedded link that redirects the user to the case docket. Id. Trina Iverson, an employee who conducted one of the searches, signed an affidavit stating that she clicked the link and saw Austin Fraase listed as an "also known as" for Aaron Fraase. Doc. 66-21. The employee who conducted the other search did not specifically remember performing Fraase's

2

background check, but she testified that she normally clicks into the case docket link if the initial search result is not conclusive. Doc. 64-17 at 35.

On May 11, Fraase's supervisor, Ryan Stalboerger, called Fraase into his office after Stalboerger received an email from Human Resources about the speeding violation on Fraase's background check. Doc. 66-6 at 65-66. He informed Fraase that the speeding violation was not "a very good look." Id. at 67. Stalboerger was not involved in the hiring process for Fraase's full-time application, but Fraase claims he interpreted Stalboerger's comments to mean Fraase would not be considered for the full-time position. Doc. 1 ¶ 62; Doc. 66-6 at 67, 70-71. Fraase expressed his confusion to Stalboerger and walked outside to call his brother. Doc. 66-6 at 71. After learning the speeding ticket belonged to his brother, Fraase relayed that information to Stalboerger, who told Fraase to contact Human Resources. Id. at 71-72.

Fraase called Elli Agather, a Human Resources employee, but she was out of the office. Id. at 72. Agather texted Fraase the next morning, May 12, to inform him that she would investigate the issue on Monday. Doc. 66-7. She also assured Fraase that his May 16 interview was not in jeopardy. Id. On the morning of Monday, May 15, Agather told Fraase she resent his background check and reiterated that Fraase had nothing to worry about. Id.

Fargo Parks ordered a second background check from Advantage on May 15. Doc. 1 ¶ 68. That same day, Advantage sent a second report to Fargo Parks that also attributed the speeding violation to Fraase. Id. ¶¶ 69-70. During his May 16 interview, a member of the panel asked Fraase about the speeding violation, and he told the panel that his brother committed the violation. Doc. 66-6 at 85. No member of the panel told Fraase that his background check negatively impacted his prospects of receiving the job or that it would delay his application process. Id. at 86. Fargo Parks

3

offered Fraase the full-time position on May 22, with a June 19 start date. Doc. 44-1 at 30. Fraase accepted the offer and began his full-time position on June 19. Id.

Due to the speeding violation in the reports, Advantage mailed adverse action notices to Fraase on May 11 and May 15, which informed him of his right under the FCRA to dispute the reports' accuracy. Doc. 66-11 at 5-6. Fraase received the notices, but he never contacted Advantage. Doc. 66-6 at 34.

On June 22, 2023, Fraase filed his complaint against Advantage. The sole count of Fraase's complaint alleges a violation of 15 U.S.C. § 1681(e) for Advantage's failure to follow reasonable procedures to assure maximum possible accuracy. Both parties move for summary judgment.

## II.  LAW AND DISCUSSION

Fraase moves for summary judgment on Advantage's liability, but he reserves the issue of damages for trial. Advantage moves for summary judgment on all issues. "A party may move for summary judgment, identifying each claim or defense—or the part of each claim or defense—on which summary judgment is sought." Fed. R. Civ. P. 56(a). Summary judgment is required "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Id. Courts must afford "the nonmoving party the benefit of all reasonable inferences which may be drawn without resorting to speculation." TCF Nat'l Bank v. Mkt. Intelligence, Inc., 812 F.3d 701, 707 (8th Cir. 2016) (citation omitted).

### A.  Motion to Strike

As an initial matter, Fraase moves to strike the declaration of Trina Iverson. Doc. 66-21. He argues Advantage did not disclose Iverson in its Rule 26(a) disclosures as an employee who prepared one of Fraase's background checks. Doc. 81. Advantage served amended initial disclosures that also omitted Iverson. Docs. 81-2, 81-3. Likewise, Advantage did not identify

4

Iverson in its interrogatory responses or the two supplements to its responses. Docs. 81-4 through 81-6. Fraase claims he first learned about Iverson on January 26, 2024, when Advantage's corporate representative identified Iverson as one of the employees that conducts background checks. Doc. 81 at 2. On January 31, 2024, Fraase noticed Iverson's deposition. Doc. 84-2. Fraase cancelled Iverson's deposition on February 13, 2024. Doc. 84-6. In depositions taken on February 14, 2024, two Advantage employees each stated that Iverson prepared one of the background checks. Doc. 84 at 4. In one of those depositions, Fraase's counsel specifically asked the witness about Iverson preparing Fraase's background report. Doc. 64-7 at 33. Discovery closed on March 25, 2024, with Fraase never taking Iverson's deposition.

If a party fails to identify a witness required under Rule 26, "the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1). To determine whether a Rule 26 violation was justified or harmless, courts in the Eighth Circuit consider "(1) the prejudice or surprise to the party against whom the testimony is offered; (2) the ability of the party to cure the prejudice; (3) the extent to which introducing such testimony would disrupt the trial; and (4) the moving party's bad faith or willfulness." Rodrick v. Walmart Stores E., L.P., 666 F.3d 1093, 1096-97 (8th Cir. 2012) (quoting Jacobsen v. Deseret Book Co., 287 F.3d 936, 953 (10th Cir. 2002)). "[T]he exclusion of evidence is a harsh penalty and should be used sparingly." Wegener v. Johnson, 527 F.3d 687, 692 (8th Cir. 2008). "The 'use of an undisclosed witness should seldom be barred unless bad faith is involved.'" Bergfeld v. Unimin Corp., 319 F.3d 350, 355 (8th Cir. 2003) (quoting Mawby v. United States, 999 F.2d 1252, 1254 (8th Cir. 1993)).

Fraase did not suffer surprise in this case. He learned about Iverson almost two months before discovery closed, and he scheduled her deposition. See Piburn v. Black Hawk-Grundy

5

Mental Health Ctr., Inc., 2016 WL 4487869, at *4-5 (N.D. Iowa Aug. 24, 2016) (permitting testimony from an undisclosed witness where the plaintiff previously intended to subpoena the witness); Bergfeld, 319 F.3d at 355 ("Although [affiant's] name was not included in Lockheed Martin's disclosures, Bergfeld had adequate notice during discovery that [affiant] was a person likely to have discoverable information."). In deposing another Advantage employee, Fraase's counsel specifically asked about Iverson conducting one of Fraase's background reports. Fraase was fully aware of Iverson's involvement before discovery closed, and he had the opportunity to take her deposition.

Fraase argues that Advantage offered Iverson's testimony in bad faith because it is attempting to use "the testimony of an undisclosed witness to advance arguments that directly contradict both its verified discovery responses and to the sworn testimony of its 30(b)(6) witness." Doc. 89 at 7. Fraase believes the contradictory argument advanced by Iverson's declaration is that "[t]here is a significant difference between Plaintiff arguing that a single employee made the same error twice versus having to establish that two different people made the same error." Id. at 6. But the Court is free to use the declaration as evidence for whatever conclusions it wishes. See Sorin Grp. USA v. St. Jude Medical S.C., Inc., 2016 WL 11783760, at *3 n.5 (D. Minn. Nov. 2, 2016) (accepting undisclosed witness declarations and stating that "while the Court will consider the declarations, it need not accept them as true and will consider competing evidence"). The relevant portion of Iverson's declaration states:

> To prepare Plaintiff's May 11, 2023 background report, I ran a manual search on the North Dakota Court's website using Plaintiff's first name, last name, and full date of birth. I then clicked on the single search result, which took me to a webpage on the North Dakota Court's website that contained information about a speeding record under the name "Fraase, Aaron Stuart a.k.a. Fraase, Austin Stuart" alongside Plaintiff's full date of birth.

6

Doc. 66-21 ¶ 4. In her declaration, Iverson attests that she specifically remembers conducting Fraase's background report. Her testimony is bolstered by three other Advantage employees that testified about the company's standard practice. Those employees said that they would typically click the case docket link on the North Dakota Courts website search results if the initial results were not self-evident. Given that, the Court finds that Advantage did not act in bad faith. Fraase's motion to strike is denied.

### B.     Fair Credit Reporting Act

Fraase alleges that Advantage violated the required compliance procedures of the FCRA, which states:

> Whenever a consumer reporting agency prepares a consumer report it shall follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates.

15 U.S.C. § 1681e(b). To establish liability, Fraase must prove "that (1) [Advantage] failed to follow reasonable procedures intended to assure the accuracy of its reports, (2) [it] reported inaccurate credit information about [him], (3) [he] suffered harm, and (4) [Advantage's] failure to follow reasonable procedures was the cause of [his] harm." Alsibai v. Experian Info. Sols., Inc., 488 F. Supp. 3d 840, 847 (D. Minn. 2020) (quoting Paul v. Experian Info. Sols., Inc., 793 F. Supp. 2d 1098, 1101 (D. Minn. 2011)). "The FCRA is not a strict liability statute." Rydholm v. Equifax Info. Servs. LLC, 44 F.4th 1105, 1108 (8th Cir. 2022). "As a result, § 1681e(b) 'does not hold a [CRA] responsible where an item of information, received from a source that it reasonably believes is reputable, turns out to be inaccurate unless the agency receives notice of systemic problems with its procedures.'" Id. (alteration in original) (quoting Sarver v. Experian Info. Sols., 390 F.3d 969, 972 (7th Cir. 2004)).

### 1. Negligent Procedures

There is no dispute that Advantage sent an inaccurate report. But the issue is whether Advantage maintained reasonable procedures to assure maximum possible accuracy. In determining whether the credit reporting agency followed reasonable procedures, courts evaluate "what a reasonably prudent person would do under the circumstances." McCann v. CareerBuilding Emp. Screening, LLC, 2018 WL 3978994, at *3 (W.D. Mo. Aug. 20, 2018). "[W]hile the determination of whether a procedure is reasonable is a question for a jury in most cases, if the reasonableness of the procedure is beyond question, summary judgment is appropriate." Quinn v. Experian Sols., 2004 WL 609357, at *3 (N.D. Ill. Mar. 24, 2004) (citation omitted); see also Gohman v. Equifax Info. Servs., LLC, 395 F. Supp. 2d 822, 826-27 (D. Minn. 2005). "Courts have considered court dockets a presumptively reliable source of information." McCann, 2018 WL 3978994, at *3 (citing Henson v. CSC Credit Servs., 29 F.3d 280, 285 (7th Cir. 1994)); see also Rydholm, 44 F.4th at 1108; Grant v. RentGrow, Inc., 2023 WL 5813140, at *6 (W.D. Tex. Sept. 6, 2023) ("Moreover, reliance on official court records is unlikely to lead to inaccurate credit reporting except in isolated instances." (quoting Henson, 29 F.3d at 285)).

Fraase argues that Advantage did not obtain the information pertaining to his alleged speeding violation from a presumptively reliable source. He disagrees with the proposition that information obtained from courts is presumptively reliable; further, he argues the North Dakota Courts website is not reliable because it is not the official court docket. Courts have expanded Henson's holding (that court dockets are presumptively reliable) beyond official court dockets to include any "source that [the CRA] reasonably believes is reputable." Rydholm, 44 F.4th at 1108; Quinn, 2004 WL 609357, at *3 (rejecting the plaintiff's argument that Henson's application should

be limited to only court dockets and stating that the "costs associated with that type of investigation would be astronomical.").

In Stewart v. ABSO, Inc., 2010 WL 3853114, at *10 (W.D. Ky. Sept. 28, 2020), the plaintiff alleged the credit reporting agency used unreasonable procedures by relying on information obtained from the Kentucky Administrative Office of the Courts, the "state-wide repository of official court records from courts throughout this Commonwealth," similar to the North Dakota Courts website. There, the court cited Henson to determine the credit reporting agency complied with the FCRA by utilizing summary information rather than assessing the official court docket. Id. at *11-12. Like the credit reporting agency in Stewart, Advantage used reasonable procedures by searching Fraase's name and date of birth on the North Dakota Courts website. Advantage believed the North Dakota Courts website was reliable, and Fraase has not offered evidence (apart from a standard disclaimer on the website) suggesting Advantage had notice that the database contained errors. See Berscheid, 2024 WL 922040, at *4 ("Because Experian believed Midland was a reputable source, Berscheid needed to present information that Experian had notice of systemic problems regarding Midland's reliability, which she did not.").

Fraase primarily challenges the sufficiency of the evidence because Advantage did not keep a copy of the search results from May 2023. Without the contemporaneous record, he argues that Advantage cannot prove that the North Dakota Courts website listed him as an "AKA" of his brother. The search results provided by Advantage were obtained on June 23, 2023, one day after Fraase filed his compliant. Doc. 64-8. The fact that Advantage produced a post-litigation screenshot is not as dubious as Fraase implies, however. The West Fargo Municipal Court separated the Fraase brothers' "jackets" on August 9, 2023. So, the June 2023 search results likely do not differ from the May 2023 results. The testimony of all Advantage employees corroborates

9

this notion. Advantage's corporate representative testified that the company's standard practice is to click into the case docket link if the name on the search results does not exactly match the search criteria to ensure the search result appears because of an alias. Doc. 64-18 at 152. Advantage's employment screening supervisor also indicated that she would only report the criminal record after clicking the case docket link to verify the alias. Doc. 64-7 at 43-44. The employee who performed one of the background checks also testified that she typically clicks into the docket link to see the alias, and Iverson, who performed the other background check, stated in an affidavit that she clicked on the docket link and confirmed the alias. Finally, the State of North Dakota provided a document showing that Odyssey listed Austin Fraase as an "AKA" of Aaron Fraase prior to August 9, 2023. Doc. 76-2. Odyssey's data is imported into the North Dakota Courts public website. Doc. 64-11 at 35.

With that, there is no genuine dispute that the North Dakota Courts website indicated Austin Fraase was an "AKA" of Aaron Fraase in May 2023. Since Advantage acted reasonably by relying on the court records, Advantage also acted reasonably by reporting the speeding violation when that court record associated the violation with Fraase. Advantage's motion for summary judgment is granted because, as a matter of law, its procedures were reasonable.

  **2.**  **Damages**

Even if Advantage did not maintain reasonable procedures, Fraase's claim also fails because he cannot show actual damages. "To maintain a claim for negligent violation of the FCRA, a plaintiff must offer proof of 'actual damages sustained by the consumer as a result of the failure.'" Peterson v. Experian Info. Sols., 44 F.4th 1124, 1126 (8th Cir. 2022) (citation omitted); see also Wiley v. Screening Reports, Inc., 2022 WL 1438963, at *5 (S.D. Iowa Mar. 1, 2022) ("[Plaintiff] survives summary judgment if the violation was willful, under § 1681n, or if it was negligent,

under § 1681o and she suffered actual damages."). "For FCRA claims, '[m]ental pain and anxiety can constitute actual damages.'" Peterson, 44 F.4th at 1127 (alteration in original) (quoting Taylor v. Tenant Tracker, Inc., 710 F.3d 824, 828 (8th Cir. 2013)). "A plaintiff may establish emotional distress damages through her own testimony" or others' observations of plaintiff's conduct. Id. Still, the plaintiff must provide evidence of "concrete emotional distress." Taylor, 710 F.3d at 829.

Fraase believes that his full-time employment "had to have been slightly delayed" due to Advantage's inaccurate report because he was offered the job on May 22 with a start date of June 19. Doc. 66-6 at 80. Specifically, he alleges that his full-time employment was delayed "by approximately a week." Doc. 1 ¶ 75. Because there were three openings for the position he applied for, he assumes Fargo Parks desired that he begin work as soon as possible. Doc 66-6 at 82. Beyond Fraase's belief that there was a "real possibility" he would have begun his full-time position sooner if not for the inaccurate background check, he provided no evidence that the background report impacted his hiring timeline. Conversely, Stacy Kruger, Fargo Parks' corporate representative and HR Director, testified that Fraase's background check did not impact his full-time position start date. Doc. 44-1 at 11-12. Kruger suggested that Fargo Parks possibly set a June 19 start date for funding or payroll scheduling purposes. Id. at 30. Fargo Parks typically does not require background checks for Maintenance Technicians, and it only required a background check from Fraase as a part of its annual review process for seasonal employees. Id. at 22. Even if Fargo Parks had required the background check as a condition of Fraase's application, its criminal background check policy does not list speeding violations as prohibited conduct. Id. at 29. Therefore, Fraase's application was not put in "decline status" due to the speeding violation on his report. Id. at 27.

On this record, Fraase did not show a genuine dispute of material fact; Advantage did not cause Fraase to suffer a week of lost wages. Fraase's employment was not conditioned on his

11

background check. Even if it was, Fargo Parks' policy does not disqualify an applicant with a speeding violation from being hired as a Maintenance Technician. Fargo Parks also offered Fraase the job six days after his interview. If the speeding violation gave Fargo Parks pause, it would not have offered Fraase the job within the typical hiring window. See Doc. 44-1 at 30 (noting that offer letters are usually sent one week after interviews are completed). Fraase's subjective belief that he should have started his full-time position sooner is insufficient to survive summary judgment.

Fraase claims he suffered emotional distress from the harm to his reputation. He testified that his reputational harm is "one of the most things that I'm still trying to deal with." Despite Advantage's inaccurate reporting, Fargo Parks hired Fraase "with no questions." Doc. 72-1; Doc. 66-6 at 96.

Additionally, Fraase's fiancé and brother signed affidavits stating that Fraase was visibly worried, lacked motivation, seemed quiet, and took naps more frequently. According to his fiancé, Fraase worried he would not be able to get other jobs that required driving due to Advantage reporting his brother's speeding ticket on his record. She testified that he was not himself for "the next month or so," but Fargo Parks offered Fraase the job on May 22, just 11 days after his initial meeting with Stalboerger and six days after his interview. Similarly, the Eighth Circuit Court of Appeals affirmed a summary judgment order denying a plaintiff emotional distress damages when a housing authority "took no adverse action" against the plaintiff after reviewing inaccurate reporting from a credit reporting agency. See Taylor, 710 F.3d at 829. In denying emotional distress damages, Eighth Circuit courts frequently mention that "extremely upset and embarrassed" plaintiffs did not seek medical treatment for their psychological or emotional injuries. E.g., Id.; Peterson, 44 F.4th at 1128; Lynch v. Experian Info. Sols., Inc., 2022 WL 16857078, at *7 (D. Minn. Nov. 10, 2022). Fraase did not provide any evidence that he sought

medical treatment. Simply put, his evidence of his emotional distress is not "the sort of concrete emotional distress that is required to constitute a genuine injury and actual damages." Lynch, 2022 WL 16857078, at *7 (quoting Taylor, 710 F.3d at 829). So, Advantage's motion for summary judgment is granted because Fraase did not suffer any actual damages.

### III.   CONCLUSION

For the reasons above, Fraase's motion for partial summary judgment (Doc. 64) is **DENIED**, and Advantage's motion for summary judgment (Doc. 66) is **GRANTED**. Because of the extensive briefing, Advantage's motion for a hearing (Doc. 86) is **DENIED**. Fraase's motion to strike (Doc. 81) is **DENIED**, and given this order, Advantage's motion to exclude testimony (Doc. 85) is **MOOT**.

**IT IS SO ORDERED**.

**LET JUDGMENT BE ENTERED ACCORDINGLY**.

Dated this 28th day of March, 2025.

*/s/ Peter D. Welte*
Peter D. Welte, Chief Judge
United States District Court